AT INDIANAPOLIS, NOVEMBER TERM, 1925, AND MAY TERM, 1926, IN THE ONE HUNDRED TENTH AND ONE HUNDRED ELEVENTH YEARS OF THE STATE.

---

## PAYNE, AGENT, *v.* VISE.

[No. 11,277. Filed June 1, 1922. Rehearing denied January 3, 1923. Transfer denied December 15, 1925.]

1. RAILROADS.—*Negligence of railroad in failing to give statutory signal for crossing does not excuse traveler from exercising care at the crossing.*—The fact that a railroad company was negligent in failing to sound the whistle and ring the bell as required by statute (§13038 Burns 1926, §5431 Burns 1914) does not excuse a traveler from exercising reasonable care at a highway crossing. p. 10.

2. RAILROADS.—*Want of signal for crossing may be considered in determining whether traveler injured at such crossing was guilty of contributory negligence.*—The failure of a railroad company to give the statutory signals for a crossing is a circumstance to be considered by a jury in determining whether a traveler injured by the train at such crossing exercised reasonable care. p. 10.

3. RAILROADS.—*Traveler crossing railroad at highway crossing, has right to believe statutory signals will be given.*—A traveler approaching a railroad crossing has the right, in the absence of evidence to the contrary, to believe that the railway company will obey the law and give the signals required by statute (§13038 Burns 1926, §5431 Burns 1914). p. 12.

4. RAILROADS.—*Whether plaintiff, injured in driving automobile on railroad track at highway crossing was guilty of contributory negligence in specific case held question of fact for jury.—*

Whether the plaintiff was guilty of contributory negligence in driving automobile on a railway track at a highway crossing where his view of approaching trains was obstructed by standing corn and clouds of dust caused by automobiles, no signal having been given of approach of train that injured him, was question of fact for the jury.    p. 13.

5.  TRIAL.—*Refusal to submit certain interrogatories was not error where they were covered by those submitted.*—Refusal to submit all of a large number of interrogatories to the jury was not error where the interrogatories refused were fully covered by those submitted.    p. 14.

From Clay Circuit Court; *Thomas W. Hutchinson,* Judge.

Action by Elmer L. Vise against John Barton Payne, Agent, etc.    From a judgment for plaintiff, the defendant appeals.    *Affirmed.* - By the second division.

*Beasley, Douthitt, Crawford & Beasley* and *Knight & Miller,* for appellant.

*Rawley & Baumunk* and *William F. Elliott,* for appellee.

McMahan, J.—Complaint against appellant as agent of the Chicago, Terre Haute and Southeastern Railway Company by appointment of the President under the transportation act of 1920 to recover damages to an automobile which was struck and injured by a train at a point where said railroad intersected two public highways.

The errors assigned are that the court erred in overruling a demurrer to the complaint, in overruling a motion for a new trial, and in overruling appellant's motion for judgment on answers to interrogatories.

The complaint, omitting the formal parts, alleges that at the time of the accident the director general of railroads was operating the above named railroad; that at a point about one mile north of the town of Blackhawk in Vigo county an improved north and south highway crossed said railroad, and an unimproved highway ex-

tended westerly from said improved highway at said crossing; that on the day of the accident standing corn five to ten feet in height covered a field lying immediately west of said improved highway and south of the unimproved highway, by reason of which the view of an engine and train of cars approaching said crossing from the southeast could not be observed by a traveler coming from the west on the unimproved highway until such traveler would come within twenty-five or thirty feet of the railroad track; that on September 15, 1919, appellant ran a passenger train over said railroad in a northwest direction at a speed of about fifty miles an hour and negligently failed to sound any whistle or bell or signal of any character between eighty and 100 rods southeast of the crossing; that appellee was at that time the owner of an automobile which he was driving east in a cautious and careful manner on the unimproved highway; that he could not observe the railroad or passenger train on account of the standing corn, although he tried to do so; that both of said highways were extremely dusty; that just before he reached said crossing he met an automobile which had turned off the improved highway and which had caused a large amount of dust to rise into the air at and about said crossing; that another automobile at the same time was approaching said crossing from the south on the improved highway and ran rapidly across the crossing. when appellee was about forty feet west of the railroad track; that another automobile was also approaching said crossing from the south on the improved highway at a rapid rate of speed; that as appellee approached said railroad track from the west he was driving in a careful manner looking and listening to the north and south but neither saw nor heard any train; when he reached a point about twenty or twenty-five feet west of the track and where the standing corn did not

obstruct his view and while his automobile was moving at a speed of ten or twelve miles an hour, he looked and listened for approaching trains, but not seeing or hearing any, he proceeded to cross the railroad to the north and just as he came upon the railroad tracks he observed a passenger train approaching about fifty feet south and east of the crossing; that he was unable sooner to see the approach of said train because of the close proximity of said automobile and because the air was filled and clouded with dust; that appellant knew of the conditions thus created and existing at said crossing and carelessly failed to sound any alarm or give any signal of the approach of the train within 100 rods of the crossing, by reason of which negligence of appellant it was impossible for appellee to observe the approach of the train in time to stop his automobile before colliding with the train which appellant negligently ran and which struck appellee's automobile, damaging the same, all of which was without any fault on the part of appellee.

The cause was tried by jury and resulted in a verdict awarding appellee substantial damages. In connection with their verdict, the jury answered certain interrogatories, wherein they found the facts to be as follows:

Appellee had frequently crossed and was familiar with the location of the railroad at the place of the accident. At the time of the accident, he was driving his automobile six miles an hour and the train was running thirty miles an hour. He looked and listened before going upon the track, the last time being when he was about one foot from the track. By looking and listening attentively, he could have seen the approaching train. The air at that time was filled with dust and prevented appellee seeing. He drove slowly in order to ascertain whether a train was approaching. Two short blasts of the whistle were sounded when the train was

about fifty feet from the crossing.  The bell began to ring when the train was about fifty feet from the crossing and continued to ring until after the accident.  On the day of the accident, a person standing in the dirt road thirty feet west of the crossing could have seen a train approaching from the south 120 rods from .the crossing.  The train made a noise as it approached the crossing, but appellee, although he had good sight and hearing, was prevented from hearing it by reason of his and other automobiles, although he listened for noise before going upon the track.  If he had stopped and looked and listened within ten or fifteen feet of the track, he could have ascertained that the train was approaching.  Appellee used reasonable precaution to avoid the accident by driving slowly and by looking and listening, although, when he drove upon the crossing, he knew he could not see the train approaching from the south on account of the dust.  He could not have discovered the approaching train if he attentively listened and looked as the dust would have prevented him discovering it.  The accident took place about two hours before sunset.  The automobile was in good working condition.  Appellee was an experienced driver and could have stopped it within ten or twelve feet by using the brakes.  The nearest rail of the track was thirty-two feet from the fence along the corn field.  Appellee's view to the southeast when he reached a point thirty-two feet from the railroad was obstructed by reason of the dust so that he could not see more than ten or fifteen feet.  If he had stopped his automobile anywhere within thirty feet of the railroad and waited for the dust to clear away, he would have had an unobstructed view to the southeast, and, in the absence of dust, when he was sixty feet from the railroad, he could have seen a train approaching forty feet away from the crossing; at thirty feet from the railroad, he could have seen it

120 rods. The engine on the train was fourteen feet high and the coaches about twelve feet. The engine was emitting smoke. There was nothing to have prevented appellee, in the exercise of due care during the last thirty feet he traveled, from stopping his automobile before going on the track, and if he had stopped it anywhere within twenty-five feet of the crossing and exercised due care, he could have seen the train in time to have avoided the accident. When he first observed the train, his automobile was on the west rail of the track, and the train fifty feet from him. He had his automobile under control as he approached the crossing, but made no effort to stop it before going upon the track.

Was it error to overrule the demurrer to the complaint, to overrule the motion for judgment on the answers to the interrogatories, and to refuse to instruct the jury that it was negligence, as a matter of law, for the appellee not to *stop* and wait until the dust had settled or cleared away?

Appellant's main contention in support of each assignment of error is that appellee was guilty of contributory negligence in not stopping and permitting the dust to disappear or settle so as to allow a view of appellant's road in the direction from which the train approached, before attempting to cross the railroad. This question is presented by the demurrer to the complaint, by the motion for judgment *non obstante,* by the refusal to give certain instructions, and by the specification in the motion for a new trial that the verdict is not sustained by sufficient evidence. Appellant insists that the condition of the air by reason of being filled with dust rendered it imperative that appellee, in the exercise of due care, should have stopped and awaited the disappearance of the cloud of dust which was an obstruction to his view. In other words, it is appel-

lant's contention that, under the facts, but one conclusion can be drawn, and that we must so hold and by our decision say, as a matter of law, that appellee was guilty of contributory negligence in not stopping his car, awaiting the disappearance of the dust and thus be reasonably sure he had a clear crossing. *Oleson* v. *Lake Shore, etc., R. Co.* (1896), 143 Ind. 405, 32 L. R. A. 149, is cited by appellant in support of its contention. It was held in that case that a traveler on a public highway, who on approaching a railroad track has an unobstructed view of an approaching train, is not relieved from contributory negligence in attempting to cross the track by the fact that his view becomes obstructed by the smoke from a train going in an opposite direction, and that such a traveler, who attempts to cross a railroad track immediately after the passage of a train whose smoke obscures the view in the opposite direction but is rapidly being carried away by the wind, is guilty of contributory negligence in not waiting until the view becomes clear. As the appellant in that case approached the railroad from the south, he saw an eastbound freight train approaching on the north track and about two hundred feet west of the crossing. He stopped about forty feet south of the south track until that train passed. This train was about nine hundred feet long, and after the engine passed over the crossing, it threw out large volumes of dense black smoke which fell to the ground on the south side of the train and between the train and appellant, and this obscured the view on the south track to the east of the crossing. As soon as the eastbound train had passed over the crossing, the appellant started his horse and drove upon the crossing. He looked to the east and listened just before he started his horse, but could see east only about one hundred feet on account of the smoke, which was then being cleared away by the wind.

As his horse stepped on the track, he saw an engine and train of cars about one hundred feet away approaching him from the east.   Both trains were running from ten to fifteen miles an hour.   When the appellant stopped and waited until the smoke settled between him and the track, his view along the track was unobstructed for a distance of at least one-half mile to the east. There was nothing at that time which prevented him seeing the train approaching from the east as well as the one from the west.   In holding that the appellant was guilty of negligence in not waiting until the smoke had cleared away, the court placed stress upon the fact that from the time he stopped to let the eastbound train pass until after the engine on that train had crossed over the crossing and the smoke had settled, appellant could, by looking, have seen the train approaching from the east, saying: "He had an unobstructed view to the east, and he either did not look in that direction, or if he looked did not heed what he saw.   It would be no excuse that immediately afterwards the smoke obscured his view of the approaching train, so that he could not see its approach.   He knew it was approaching and went upon the track at his peril.   Such conduct, under the authorities cited, is negligence *per se*."

Conceding that the court correctly held in the case just cited that the traveler was guilty of contributory negligence, the facts in that case are different from the facts in the instant case.   Here the unimproved road on which appellee was traveling intersected the gravel road at right angles, the center line of the two roads meeting at a point from ten to twelve feet south of the point where the railroad crossed the center line of the gravel road.   The highways were both very dusty, the dust being about two inches deep on the dirt road.   Just before appellee reached the gravel road where he turned to the north to cross appellant's railroad, he met an

automobile which passed him on the north side of the road; just as he reached the gravel road, another automobile going north on the gravel road passed in front of him; a third automobile was then approaching from the south at a high speed; all of these automobiles were creating clouds of dust; appellee was driving slowly and had checked his automobile so as to allow one of the other automobiles to pass in front of him and over the railroad crossing, which it did; appellee was about eight or ten feet behind the automobile that had just crossed the railroad and could not and did not see the approaching train until he was in the act of crossing, at which time the train was about fifty feet away. No crossing or warning signals of any kind had been given or sounded by the trainmen, until they saw appellee on the crossing fifty feet in front of the train. The trainmen were in position to see, and if they did not see the cloud of dust at the crossing, could, in the exercise of reasonable care, have seen it when they were from a quarter to a half-mile to the east. The complaint alleges and the jury by their general verdict find that appellant's servants were negligent in not giving any signals of the approach of the train. With this dense cloud of dust before them, the engineer and firemen ought to have known, in fact, we think they were bound to know, that people were at that time making use of the highway and in all probability would be crossing or attempting to cross the railroad in front of the approaching train. Section 13038 Burns 1926, §5431 Burns 1914 required them to sound the whistle three times when not less than eighty nor more than one hundred rods from the crossing and to ring the bell continuously from the time of sounding the whistle until the engine should have fully passed the crossing. We need not and do not decide that appellant's servants in charge of this train should have sounded the whistle

after it passed a point eighty rods from the crossing and prior to the time when the servants actually saw appellee and when the train was only fifty feet from the crossing. It is sufficient that we say that circumstances might arise where it would be negligence for those operating a train not to sound the whistle as well as ring the bell when the train was within eighty rods from the crossing. Such question is ordinarily one of fact to be submitted to the jury.

The fact, if it be a fact, that appellant was negligent in failing to ring the bell or sound the whistle, did not excuse appellee from exercising reasonable 1, 2. care. But in determining whether, as a matter of fact, appellee failed to use reasonable care, the jury had the right to consider all the circumstances disclosed by the evidence bearing upon that question, including the failure of appellant to give any signals of the approach of the train, as such failure is a circumstance in determining whether appellee exercised the proper degree of care. *Cleveland, etc., R. Co.* v. *Rumsey* (1913), 52 Ind. App. 371; *Wabash R. Co.* v. *Biddle* (1901), 27 Ind. App. 161; *Cleveland, etc., R. Co.* v. *Harrington* (1892), 131 Ind. 426; *Pennsylvania Co.* v. *Stegemeier, Admx.* (1889), 118 Ind. 305.

The Supreme Court, in discussing reasonable care and the duty of a traveler to stop, said: "The duty to use ordinary care to avoid injury which is imposed on one about to make use of a street over which railroad trains cross does not ordinarily require him to stop but it does require him to look and listen and to exercise ordinary care to select a place where the act of looking and listening will be reasonably effective. That point, however, in its precise relation to the track in feet, is seldom to be determined as a matter of law. The underlying test being, Was ordinary care used by the traveler in selecting the place in view of the conditions before

him and the danger reasonably to be anticipated? It
is only when ordinarily prudent, impartial and sensible
men could reach but one conclusion that the question
becomes one of law. When different men equally pos-
sessing such qualities might draw different inferences
from the facts as to the existence of contributory negli-
gence then it is not a question of law." *Pittsburgh,
etc., R. Co.* v. *Dove* (1916), 184 Ind. 447.

*Fort Wayne, etc., Traction Co.* v. *Schoeff* (1914), 56
Ind. App. 540, is cited by appellant in support of its
contention that appellee was guilty of such negligence
as to prevent a recovery by this failure to stop before
attempting to cross the tracks. This case goes a long
way in support of appellant's contention, but, as was
said by the Supreme Court in *Pittsburgh, etc., R. Co.*
v. *Dove, supra,* there was no petition filed to transfer
that case to the Supreme Court. And, in no event does
it wholly support the doctrine that the driver of an auto-
mobile must, in every case and circumstance, stop his
car and stop it at a particular place as a matter of
law in order to escape a charge of contributory negli-
gence. The cases cited and relied on by this court in
*Fort Wayne, etc., Traction Co.* v. *Schoeff, supra,* apply
a more stringent rule to automobiles than to other
means of travel. Such cases, however, are not gen-
erally followed in this state but the rule as stated by us is.
*Indiana Union Traction Co.* v. *Love* (1912), 180 Ind.
442; *Pittsburgh, etc., R. Co.* v. *Dove, supra.*

"The court cannot say as a matter of law that ordi-
nary care required a designated act to be done or that
it required a specific act to be omitted, unless the act in
question was of such a character as to be wholly in-
compatible with the exercise of reasonable care when
considered in the light of attending circumstances. It
must be so absolutely inconsistent with the exercise of
ordinary care that there could be no room for reason-

able minds to differ on the question.  So long as there is room for an honest difference between reasonable minds as to whether or not the doing (or the omission to do, as the case might be) of the particular act was consistent with the care that a man of ordinary prudence would use under the circumstances, the question is one of fact for the jury.  *  *  *  Appellant asks us to go further in this case and to declare as a matter of law that other specific precautions on the part of appellee were necessary in the exercise of ordinary care, as, for instance, to stop his motor, or to stand up and look, or to get out and go forward and look up and down the track.  It is possible that the judge who presided at the trial may have thought that ordinary care under the circumstances shown required the use of some or all of such precautions or that some of the members of this court may think so; but these are not questions of law for the decision of courts." *Central Indiana R. Co.* v. *Wishard* (1917), 186 Ind. 262, 268.

One using a highway at the crossing of a railroad cannot do so without any care for his own safety, nor can he repose a blind confidence in receiving the warning signals required to be given by locomotive engineers and pursue his course without looking or listening for the approach of trains, but such traveler has the right, in the absence of evidence to the contrary, to believe that the railway company will obey the law and give such signals as the law requires.  *Miller* v. *Terre Haute, etc., R. Co.* (1896), 144 Ind. 323.

In *Pittsburgh, etc., R. Co.* v. *Wright, Exr.* (1881), 80 Ind. 236, where it was impracticable for one upon the highway to have seen the approaching train until he had come upon or very near to the track, and where it was insisted that it was the duty of the traveler to have left his team and gone upon the track to see that there

was no danger before undertaking to drive his team across, the court said: "It can not be said, however, as a matter of law, that the driver should have taken this precaution. It was a question of fact, in the light of all the circumstances, whether reasonable prudence required this course, and whether the failure to take it was negligence. If, by reason of wind, rain, or for other cause, it had been impossible to hear the bell or whistle of the locomotive, it might or should perhaps be deemed to have been imprudent and careless to drive upon the crossing without in some way making sure that it was safe, but whether the driver should have left his team, for this purpose, may have depended on other circumstances; as, for instance, the character of the team itself and the risk incurred in leaving it. In whatever light the subject is considered, the reasonable solution of such inquiries is found in the proposition that negligence is ordinarily a question of fact."

The facts as found by the jury are uncertain and contradictory, and when the contradictory findings are eliminated, are not sufficient to overthrow the general verdict.

It cannot be said that appellee exercised no care to avoid the collision. The complaint alleges, and the jury by their general verdict found, that by reason of the standing corn he was unable to observe the railroad to the southeast of the crossing; that as he approached, he drove in a cautious manner and looked and listened in both directions for trains, but neither saw nor heard any; that, when he was from ten to twenty feet from the track, he slowed the speed of his automobile to eight or ten miles an hour and looked and listened for approaching trains and, not seeing or hearing any, proceeded to cross; and that no warning was given of the approach of the train. A jury composed of twelve men, who, we have the right

to assume, were men of at least average intelligence, by their verdict found that appellee, in view of the circumstances, exercised reasonable care for his safety. Their verdict was approved by the trial judge and we are not prepared to say they erred in their judgment. Under the facts and circumstances, we are not prepared to say as a matter of law that appellee was guilty of contributory negligence. It is not necessary for us to review the authorities on this subject. In addition to the authorities heretofore cited, see *Reed* v. *Chicago, etc., R. Co.* (1888), 74 Iowa 188, 37 N. W. 149; *Mayes* v. *St. Louis, etc., R. Co.* (1897), 71 Mo. App. 141; *Weller* v. *Chicago, etc., R. Co.* (1894), 120 Mo. 635, 23 S. W. 1061, 25 S. W. 532; *Grand Trunk R. Co.* v. *Ives* (1892), 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; *Southern R. Co.* v. *Bryant* (1897), 95 Va. 212, 28 S. E. 183; *Judson* v. *Central, etc., R. Co.* (1899), 158 N. Y. 597, 53 N. E. 514; *New York, etc., R. Co.* v. *Moore* (1901), 105 Fed. 725, 45 C. C. A. 21; *Malott* v. *Hawkins* (1902), 159 Ind. 127, 134; *Chicago, etc., R. Co.* v. *Williams* (1896), 56 Kans. 333, 43 Pac. 246. Appellee exercised some care. Whether he exercised the *quantum* of care the law required of him under the circumstances was, under the evidence, a question for the jury to determine as a matter of fact. *Indianapolis, etc., Traction Co.* v. *Harrell* (1922), 192 Ind. 188, 134 N. E. 871. We therefore hold that the court committed no error in overruling the demurrer to the complaint, or in overruling the motion for a new trial, or in overruling the motion for judgment *non obstante.*

Appellant contends that the court erred in refusing to submit certain interrogatories to the jury and to require them to be answered by the jury. At the proper time, appellant submitted eighty interrogatories with the request that the jury be required to answer each of them. The court submitted

all of such interrogatories except eight. No claim is made that the interrogatories which the court refused to require the jury to answer were not fully covered by those which were submitted to and answered by the jury. We have examined them and are of the opinion that there was no error in the action of the court.

Judgment affirmed.

Nichols, J., dissents.